SCOTTLYNN J HUBBARD, IV, SBN 212970
**DISABLED ADVOCACY GROUP, APLC**
12 Williamsburg Lane
Chico, CA 95926
Telephone: (530) 895-3252
Facsimile: (530) 894-8244
Email: USDCEast@HubsLaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA PICKERN, | No. |
| Plaintiff, | **Plaintiff's Complaint** |
| vs. | |
| GROCERY OUTLET, INC. dba GROCERY OUTLET #0073; ALAMO GROUP IV, LLC, | |
| Defendants. | |

## I. SUMMARY

1. This is a civil rights action by plaintiff Brenda Pickern ("Pickern") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

Grocery Outlet #0073
1366 East Main Street
Woodland, CA 95776
(referred to hereinafter as "the Store")

2. Pickern seeks damages, injunctive and declaratory relief, attorney fees and costs pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) and related California statutes against: Grocery Outlet, Inc. dba Grocery Outlet #0073; and, Alamo Group IV, LLC (hereinafter collectively referred to as "Grocery Outlet").

## II. JURISDICTION

3. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4. Supplemental jurisdiction for claims brought under parallel California law—arising from the same nucleus of operative facts—is predicated on 28 U.S.C. § 1367.

5. Pickern's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV. PARTIES

7. Grocery Outlet owns, operates, and/or leases the Store, and consists of a person (or persons), firm, and/or corporation.

8. Pickern suffers from spinal cerebellar ataxia, blood clots in the femoral vein of her right leg, and a subarachnoid hematoma in her brain. She also suffers from epilepsy seizure disorder, is legally blind and lacks the ability to speak clearly or swallow. Pickern uses an electric wheelchair and mobility equipped van when traveling in public. Consequently, Pickern is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V. FACTS

9. The Store is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10. Pickern visited the Store and encountered barriers (both physical and intangible) that interfered with—if not outright denied—her ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility. To the extent known by Pickern, the barriers at the Store included, but are not limited to, the following:

- The access aisles are obstructed by shopping carts, thus making them – as well as their adjacent parking spaces – unusable by Pickern;
- The accessible route from the disabled parking spaces to the entrance has slopes and cross slopes that exceed 2.0%, thus making it difficult for Pickern to traverse and reach the Store;
- The restroom door requires too much force to operate, thus making it difficult for Pickern to open and shut;
- The disposable seat cover dispenser obstructs the use of the back grab bar, thus making it difficult for Pickern to transfer from her wheelchair to the water closet;

*Pickern v. Grocery Outlet, Inc., et al.*
Plaintiff's Complaint

Page 3

- The back grab bar does not extend far enough on the wide side of the water closet, thus making it difficult for Pickern to transfer from her wheelchair to the water closet;
- The toilet tissue dispenser is mounted too high, thus making it difficult for Pickern to reach and use;
- The flush valve is not located on the wide side of the water closet, thus making it difficult for Pickern to reach and use;
- The pipes beneath the lavatory are improperly and incompletely wrapped, thus causing Pickern to risk burning her legs when washing her hands;
- The soap dispenser is mounted too high and outside of the reach range limits, thus making it difficult for Pickern to reach and use; and,
- The paper towel dispenser is mounted too high, thus making it difficult for Pickern to reach and use.

These barriers prevented Pickern from enjoying full and equal access.

11.     Pickern was also deterred from visiting the Store because she knew that the Store's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Store because of the future threats of injury created by these barriers.

12.     Pickern also encountered barriers at the Store, which violate state and federal law, but were unrelated to her disability. Nothing within this complaint, however, should be construed as an allegation that Pickern is seeking to remove barriers unrelated to her disability.

13.     Grocery Outlet knew that these elements and areas of the Store were inaccessible, violate state and federal law, and interfere with (or deny) access to

the physically disabled.  Moreover, Grocery Outlet has the financial resources to remove these barriers from Grocery Outlet (without much difficulty or expense), and make the Store accessible to the physically disabled.  To date, however, Grocery Outlet refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.   At all relevant times, Grocery Outlet has possessed and enjoyed sufficient control and authority to modify the Store to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.  Grocery Outlet has not removed such impediments and has not modified the Store to conform to accessibility standards.

## VI. FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

15.   Pickern incorporates the allegations contained in paragraphs 1 through 15 for this claim.

16.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

17.   Grocery Outlet discriminated against Pickern by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Store during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

18.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal

is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

19. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

20. Here, Pickern alleges that Grocery Outlet can easily remove the architectural barriers at Store without much difficulty or expense, and that Grocery Outlet violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

21. In the alternative, if it was not "readily achievable" for Grocery Outlet to remove the Store's barriers, then Grocery Outlet violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct an Accessible Facility

22. On information and belief, the Store was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

23. The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

1   24. Here, Grocery Outlet violated the ADA by designing or constructing
2   (or both) the Store in a manner that was not readily accessible to the physically
3   disabled public—including Pickern—when it was structurally practical to do so.[1]

Failure to Make an Altered Facility Accessible

5   25. On information and belief, the Store was modified after January 26,
6   1992, independently triggering access requirements under the ADA.

7   26. The ADA also requires that facilities altered in a manner that affects
8   (or could affect) its usability must be made readily accessible to individuals with
9   disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an
10  area that contains a facility's primary function also requires adding making the
11  paths of travel, bathrooms, telephones, and drinking fountains serving that area
12  accessible to the maximum extent feasible. Id.

13  27. Here, Grocery Outlet altered the Store in a manner that violated the
14  ADA and was not readily accessible to the physically disabled public—including
15  Pickern—to the maximum extent feasible.

Failure to Modify Existing Policies and Procedures

17  28. The ADA also requires reasonable modifications in policies,
18  practices, or procedures, when necessary to afford such goods, services, facilities,
19  or accommodations to individuals with disabilities, unless the entity can
20  demonstrate that making such modifications would fundamentally alter their
21  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

22  29. Here, Grocery Outlet violated the ADA by failing to make
23  reasonable modifications in policies, practices, or procedures at the Store, when
24  these modifications were necessary to afford (and would not fundamentally alter
25  the nature of) these goods, services, facilities, or accommodations.

---

[1] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Pickern v. Grocery Outlet, Inc., et al.*
Plaintiff's Complaint

30. Pickern seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

31. Pickern also seeks a finding from this Court (*i.e.,* declaratory relief) that Grocery Outlet violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## VII. SECOND CLAIM

**Disabled Persons Act**

32. Pickern incorporates the allegations contained in paragraphs 1 through 30 for this claim.

33. California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

34. California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

35. Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

36. Here, Grocery Outlet discriminated against the physically disabled public—including Pickern—by denying them full and equal access to the Store. Grocery Outlet also violated Pickern's rights under the ADA, and, therefore, infringed upon or violated (or both) Pickern's rights under the Disabled Persons Act.

37. <u>For each offense</u> of the Disabled Persons Act, Pickern seeks actual damages (both general and special damages), statutory minimum damages of one

1 thousand dollars ($1,000), declaratory relief, and any other remedy available
2 under California Civil Code § 54.3.

3   38.   She also seeks to enjoin Grocery Outlet from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## VIII. THIRD CLAIM
### Unruh Civil Rights Act

39.   Pickern incorporates the allegations contained in paragraphs 1 through 30 for this claim.

40.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

41.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

42.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

43.   Grocery Outlet's aforementioned acts and omissions denied the physically disabled public—including Pickern—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

44.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Pickern by violating the Unruh Act.

*Pickern v. Grocery Outlet, Inc., et al.*
Plaintiff's Complaint

1  45. Pickern was damaged by Grocery Outlet's wrongful conduct, and
2  seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each</u>
3  <u>offense</u>.
4  46. Pickern also seeks to enjoin Grocery Outlet from violating the
5  Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred
6  under California Civil Code § 52(a).

## IX. FOURTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

9  47. Pickern incorporates the allegations contained in paragraphs 1
10 through 13 for this claim.
11 48. Health and Safety Code § 19955(a) states, in part, that: California
12 public accommodations or facilities (built with private funds) shall adhere to the
13 provisions of Government Code § 4450.
14 49. Health and Safety Code § 19959 states, in part, that: Every existing
15 (non-exempt) public accommodation constructed prior to July 1, 1970, which is
16 altered or structurally repaired, is required to comply with this chapter.
17 50. Pickern alleges the Store is a public accommodation constructed,
18 altered, or repaired in a manner that violates Part 5.5 of the Health and Safety
19 Code or Government Code § 4450 (or both), and that the Store was not exempt
20 under Health and Safety Code § 19956.
21 51. Grocery Outlet's non-compliance with these requirements at the
22 Store aggrieved (or potentially aggrieved) Pickern and other persons with
23 physical disabilities. Accordingly, she seeks injunctive relief and attorney fees
24 pursuant to Health and Safety Code § 19953.

*Pickern v. Grocery Outlet, Inc., et al.*
Plaintiff's Complaint

# X. PRAYER FOR RELIEF

WHEREFORE, Pickern prays judgment against Grocery Outlet for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Declaratory relief that Grocery Outlet violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4. Attorneys' fees, litigation expenses, and costs of suit.[2]

5. Interest at the legal rate from the date of the filing of this action.

DATED: April 15, 2014          DISABLED ADVOCACY GROUP, APLC


                                                                                   */s/ Scottlynn J Hubbard IV, Esquire*
                                                                                    SCOTTLYNN J HUBBARD IV
                                                                                    Attorney for Plaintiff

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Pickern v. Grocery Outlet, Inc., et al.*
Plaintiff's Complaint